UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------------------------X

LAKWAN JACKSON,

                                Plaintiff,

            -against-

MKRB LIQUIDATION, INC., formerly "LINE
SYSTEMS, INC."; BLOCK LINE SYSTEMS LLC;
and JEFF THOMAS, *individually.*

                          Defendants.
----------------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff Demands A
Trial by Jury

Plaintiff, LaKwan Jackson, as and for her Complaint against Defendants respectfully alleges

upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42
   U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of
   1991, Pub. L. No. 102-166 ("Title VII")), and the New Jersey Law Against
   Discrimination ("NJLAD"), and seeks damages to redress the injuries Plaintiff has
   suffered as a result of being sexually assaulted and harassed, discriminated against on the
   basis of sex/gender, and retaliated against by her employer for complaining of harassment
   and discrimination.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal
   Question under Title VII of the Civil Rights Act. The Court also has supplemental
   jurisdiction over the State Causes of Action.

3. Venue is proper in this district based upon Defendants' principal place of business within the County of Chester, within the Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events took place in the County of Camden, New Jersey.

4. On or about June 14, 2017, Plaintiff filed charges with the EEOC against Defendants as set forth herein.

5. Plaintiff's claim was dual filed and is currently pending with the Pennsylvania Human Relations Commission ("PHRC").

6. Plaintiff's claims with the Pennsylvania Human Relations Commission are not yet ripe for suit because the administrative processes have not been completed.

7. Plaintiff reserves her right to amend her Complaint to add Pennsylvania state and local causes of action when her administrative rights are exhausted.

8. On or about August 3, 2017, the EEOC issued Plaintiff a Right to Sue Letter.

9. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

**PARTIES**

10. Plaintiff LaKwan Jackson (hereinafter also referred to as Plaintiff and "Jackson") is an individual female who is a resident of the State of New Jersey, within the County of Camden.

11. At all times material, Defendant MKRB LIQUIDATION, INC., formerly known as "LINE SYSTEMS, INC.," is a domestic business corporation existing and operating by virtue of the laws of the Commonwealth of Pennsylvania.

12. At all times material, Defendant BLOCK LINE SYSTEMS, LLC was and still is a

foreign limited liability company existing and operating by virtue of the laws of the State of Ohio.

13. At all times material, Defendant MKRB LIQUIDATION, INC., formerly "LINE SYSTEMS, INC." and Defendant BLOCK LINE SYSTEMS, LLC, (hereinafter collectively referred to as "Defendants" and/or "Line Systems") were Plaintiff's joint and solo employer.

14. At all times material, Defendant Line Systems owned and operated its corporate headquarters at 1645 West Chester Pike, Suite 200, West Chester, Pennsylvania 19382 (hereinafter referred to as the "West Chester Office") and a sales office located at 1020 Laurel Oak Road, Voorhees, New Jersey 08043 (hereinafter referred to as the "Voorhees Office").

15. At all times material, Defendant JEFF THOMAS (hereinafter referred to as Defendant and/or "Thomas") was and is employed by Defendant Line Systems as the Director of Sales.

16.  At all times material, Plaintiff was an employee of Defendants.

17. At all times material, Defendant Thomas had supervisory authority over Plaintiff.

## MATERIAL FACTS

18. On or around January 1, 2016, Defendant Line Systems sent Plaintiff a confirmation letter in which Defendant offered Plaintiff a full-time position as a "Sales Account Manager."

19. On or around February 3, 2016, Plaintiff began her employment with Defendants.

20. For approximately the first two months of Plaintiff's employment, Defendant assigned

Plaintiff to work from the Voorhees office on Tuesdays and Thursdays, as well as the West Chester office on Mondays, Wednesdays, and Fridays. After approximately two months, Plaintiff was scheduled to work out of the Vorhees Office as most of Plaintiff's accounts were based out of Vorhees, New Jersey in addition to the fact that Plaintiff lived nearby the Vorhees Office.

21. Throughout Plaintiff's employment with Defendant, she was subjected to numerous acts of sexual harassment, sex discrimination, retaliation and hostile work environment by her supervisor, Defendant Thomas.

22. Almost immediately upon hiring Plaintiff, Defendant Thomas began to treat Plaintiff differently. Mr. Thomas began speaking to Plaintiff in an extremely harassing and obscene manner.

23. In or around Plaintiff's first week of Employment at the West Chester Office, Defendant Thomas invited Plaintiff to join him for a "1-on-1" lunch off-site near the West Chester Office. While in the car, Defendant Thomas reached across the center console and began to rub Plaintiff's upper thigh.

24. Plaintiff attempted to move her leg away from his hand, but Defendant Thomas persisted in his actions.

25. In response, Defendant Thomas asked Plaintiff if she would perform oral sex in exchange for him treating her to lunch.

26. Following this encounter and continuing throughout the course of her employment, Defendant Thomas would send Plaintiff unwelcome sexually explicit text messages.

27. Plaintiff immediately became noticeably uncomfortable by Defendant Thomas' offensive question/proposition. Plaintiff was further intimidated by Defendant Thomas because he was her

direct supervisor.

28.  After having been employed by Defendants for two months, Defendant Thomas continued to make Plaintiff work out of the West Chester Office even though it became time for Plaintiff to work only out of the Vorhees Office because Defendant Thomas worked primarily out of the West Chester Office.

29. At all times material and whenever Plaintiff worked out of the West Chester Office, Defendant Thomas would lurk and linger near Plaintiff while she was working.  On a regular occurrence throughout the work week, Defendant Thomas would make unwelcome sexually obscene comments to Plaintiff as she worked.

30. By means of example only, on at least one occasion while Plaintiff was working in the West Chester Office, Defendant Thomas walked up to plaintiff and told her in words or substance to "get those jaws ready."  Plaintiff understood Defendant Thomas' request to refer to oral sex.

31. At all times material, Defendant Thomas would threaten Plaintiff by "reminding" Plaintiff that he helped her get the job or was responsible for why she had her job. Defendant Thomas was aware that Plaintiff needed the income from her job.

32. On at least three occasions while Plaintiff was working in the West Chester Office, Defendant Thomas continued his inappropriate sexual advances, asking Plaintiff to perform oral sex on him, implying that it was part of her job to do so. As Plaintiff needed the income from her job, Plaintiff reluctantly did so.  At all times, Plaintiff was noticeably disturbed and uncomfortable by the unwelcome sexual comments and conduct.

33. On at least four separate occasions throughout the course of her employment with Defendants, Defendant Thomas would go to Plaintiff's house to have sex with Plaintiff at

Plaintiff's home in New Jersey.

34. On each occasion, Plaintiff reluctantly had sexual intercourse with Defendant Thomas, feeling obligated to do so and fearing that she would lose her job if she did not comply with Defendant Thomas' sexual demands.

35. Despite the continuous harassment from Defendant Thomas, Plaintiff continued to perform well at work, receiving several commendations for her performance from Defendant's Executive Vice President, Warren Reyburn.

36. In or around the end of September 2016, Plaintiff approached Defendant Thomas to discuss his unwelcome conduct. Plaintiff informed Defendant Thomas that she was uncomfortable by the ongoing sexual harassment and demanded that it stop immediately. In response, Defendant Thomas became angry with Plaintiff.

37. Directly following Plaintiff's opposition to Defendant Thomas' conduct, Defendant Thomas began acting differently towards Plaintiff.  By means of example only, Defendant Thomas was consistently rude and dismissive whenever Plaintiff attempted to speak with him.

38. Around September or October of 2016, Plaintiff reported Defendant Thomas' hostile behavior towards her to Defendant Line Systems' Human Resources department. In response, Defendant Line Systems told Plaintiff in words or substance "not to worry about it" and further informed Plaintiff that she was not the only person who had complained about Defendant Thomas' behavior.

39. Around December 17, 2016, Defendant Thomas called Plaintiff while she was out of work on pre-approved sick leave and informed her that he was canceling her leave, and that Plaintiff was to report to the office on the following Monday.

40. On or around December 19, 2016, when Plaintiff arrived for work at the West Chester Office, Defendants called Plaintiff into a meeting with a Human Resources representative, Defendant Thomas, and another supervisor. In that meeting, Defendants unlawfully terminated Plaintiff.

41. Plaintiff was wrongfully terminated on the basis of her sex/gender, and in direct retaliation for her opposition to Defendant Thomas' unlawful sexual harassment.

42. That as a result of Defendants conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

43. Plaintiff suffers from regular panic attacks and nightmares relating to Defendants conduct. Plaintiff is having difficulty sleeping or eating.

44. As a result of defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

45. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. plaintiff has further experienced severe emotional and physical distress.

46. As defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against all the defendants, jointly and severally.

47. The above are just some examples, of some of the discrimination and retaliation to which defendants subjected Plaintiff.

48. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

49. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

50. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

51. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e ' *et seq.*, by discriminating against Plaintiff because of her sex/gender.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (Not Against Individual Defendants)

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

54. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION**
**UNDER NEW JERSEY STATE LAW**
**<u>DISCRIMINATION</u>**

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: " It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a) For an employer, because of race . . , color, national origin . . , sex.. to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

57. The full statute reads as follows: **10:5-12. Unlawful employment practices, discrimination.**

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in

the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; provided, however, it shall not be an unlawful employment practice to refuse to accept for employment an applicant who has received a notice of induction or orders to report for active duty in the armed forces; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment any person on the basis of sex in those certain circumstances where sex is a bona fide occupational qualification, reasonably necessary to the normal operation of the particular business or enterprise; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age; provided further that it shall not be an unlawful employment practice for a club exclusively social or fraternal to use club membership as a uniform qualification for employment, or for a religious association or organization to utilize religious affiliation as a uniform qualification in the employment of clergy, religious teachers or other employees engaged in the religious activities of the association or organization, or in following the tenets of its religion in establishing and utilizing criteria for employment of an employee; provided further, that it shall not be an unlawful employment practice to require the retirement of any employee who, for the two-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if that employee is entitled to an immediate non-forfeitable annual retirement benefit from a pension, profit

sharing, savings or deferred retirement plan, or any combination of those plans, of the employer of that employee which equals in the aggregate at least $27,000.00; and provided further that an employer may restrict employment to citizens of the United States where such restriction is required by federal law or is otherwise necessary to protect the national interest.

58. New Jersey's Law against Discrimination Section 10:5-12(l) sets forth in pertinent part as follows: [i]t shall be . . . an unlawful discrimination . . . [f]or any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any other person on the basis of the . . . sex . . . of such other person . . ."

59. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

60. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person

having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

63. Defendants violated this section as set forth herein.

## AS A FIFTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## AIDING AND ABETTING

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.   It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

66. Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

67. Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

As such, Plaintiff has been damaged as set forth herein.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the

Court deems just and proper.

Dated:  September 28, 2017
          Philadelphia, PA

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By: _____
      Chloe E. Gartside, Esq.
      chloe@dereksmithlaw.com
      1845 Walnut Street, Suite 1600
      Philadelphia, Pennsylvania 19103
      (215) 391-4790